Our first case for today is 2016-1088 United States v. American Home Assurance Company. Ms. Farrell, please proceed when you're ready. Good morning, Your Honors. May it please the Court. The trial court erred as a matter of law when it found that the United States was not entitled to equitable interest, notwithstanding the fact that it had found that the balancing of the equities actually found in favor of the United States. But that instead, the award of interest under Section 580 would more than compensate the government. Why the trial court erred as a matter of law is because Section 580 is not about compensatory interest. It's not about making a person whole. It's about preventing sureties from refusing to pay on their obligations and forcing the United States to actually bring a collection action. The United States should never have to be a plaintiff in a collection action against a surety for whom the Department of Treasury has actually extended the ability for that surety to issue customs bonds, maritime bonds. If we were just to look at the plain language of the statute, it says interest, right? Yes, Your Honors. And we haven't done a true statutory treatment, but we've had a number of cases that have referred to 580 as prejudgment interest. Yes, Your Honor. But now you want us to think of it as not as interest, but as a penalty. Well, I want the Court to think of it, Your Honor, as interest. Still, yes, because that is, as Your Honor points out, that is the plain language of that provision. But that provision also has additional language that kind of calls into question the compensatory construct, because it talks about only interest at 6% rate. So when you place an actual rate of interest, you preclude the ability for that provision to actually provide compensatory interest. Are you then suggesting there are many, many, many statutes across various areas of law where they actually have a set interest rate? Are you saying that in all of those statutes where the interest rate is set, those would all be treated as penalties and therefore not interest solely because the rate is set in those statutes? Your Honor, I don't believe that that would be true. I don't know what those statutes would be. But what makes this particular provision unique is that it hinges, it pivots on the United States actually being forced to bring an action to recover duties from a surety who's made a promise to the United States to pay on demand. Congress, as this Court has recognized in Hartford, Congress recognized that 1581A is the proper approach for anyone who wants to be heard. If you think customs has made a decision that's inappropriate or incorrect, you bring it through a 1581A action. Here, what you have is a surety who surely could have brought a 1581A action. It brought a protest and chose not to bring an action. It sat back on its rights. It then triggered the United States into actually having to bring litigation against it. Am I remembering right that this originated in a 1799 statute and it was part and parcel of I think a provision or went hand in glove with a provision that maybe doesn't exist anymore that expressly said the United States can sue on a bond so that at the time it was enacted, it looked like a perfectly ordinary you can sue the United States and when you sue, you get 6%. And 6% was a pretty darn standard more or less inflation equaling rate in 1799. Why doesn't all of that suggest when 6% is compensatory, there's no need for more? Well, Your Honor, because 6% can never be compensatory. Sure it can if the timing, right now it's plenty compensatory. Well, it would be over. The value of money is nowhere near 6%. Absolutely, Your Honor, and that's the very point. It would be overcompensating because if the interest rate is 1%. I meant, of course, at least compensatory, more than compensatory. It would be if one were to look at it as being a compensatory statute. But I believe that the reason we don't see that as compensatory is for the reason that Your Honor is bringing out from the fact that there's a 6%. At times, 6% will be overcompensatory. Again, this feels like an argument that any time Congress sets out interest and mandates a statutory amount, the minute that statutory amount is inconsistent with the rate of inflation, according to you, that statute is now a penalty statute and no longer a compensatory statute. That doesn't work very well for me. Your Honor, I don't know those provisions, but I can't say with specificity, but if those provisions said that the United States had afforded a right to the person who is going to be the subject of that provision, afforded them a right to make premiums to earn profit, because the United States extended the right for them to issue bonds in federal courts for appeals, for bail bonds, for maritime, for customs. The fact that you've given them a business, extended them an opportunity for business, part and parcel of that was when we call in the bond, you pay it on demand. And if you think we're wrong about calling in that bond, this Court has said time and again, the best way, the way Congress wants, the structure of the statute, is for that surety to then bring a protest. And if they lose that protest, to then bring a 1581A action, in this case in the Court of International Trade. So if there were a statute that said the United States would be forced to then go to all the trouble of bringing litigation against the party for whom it was expecting the revenue to be protected, the public fisc is supposed to be protected by the surety. The surety has sat back for over a decade and refused to pay, notwithstanding the fact that they conceded liability under the bond itself. Do you believe that the lower court didn't have the authority to decide that equitable interest was inappropriate in this case in light of the amount of compensation the government was already receiving? We believe that the trial court below has complete discretion on whether or not to award equitable interest because that is a court-ordained concept. Our problem with what the court said in its opinion was that because 580 compensated you. And our position is that 580 doesn't compensate. If you don't want to award equitable interest because you don't think we deserve it, that's one thing. That's within the abusive discretion of the trial court. Well, what the court didn't say was you can never have equitable interest because of the presence of 580. So clearly the judge was not looking at it as 580 is meant to be the exclusive form of compensation for the government. So clearly this court left open the possibility of equitable interest despite a 580 award. Right, Your Honor. And in that respect, but it seems... But once you know that that's the way that judge, she, he decided the case, then doesn't it seem like a very case-specific decision that equitable interest is not to be awarded in this case? If we understand that the judge recognized and allowed for the possibility of equitable interest to be awarded alongside of 580 interest, then it doesn't seem like a big ruling of law. It seems more like a case-specific decision about whether equitable interest is appropriate in this case. Well, I think that whether or not equitable interest would be appropriate is separate and apart from 580. 580 is its own interest. This court has said that we balance the equities. So equitable interest at the trial court level requires a balancing of the equities. So it may be that you decide at the trial court level the equities don't warrant it. But the trial court may also have been kind of telegraphing as anyone... I thought your position is that the better view of the law of prejudgment interest is that you don't do a lot of equitable balancing. You just look at what's necessary to make you whole, which happens to be the one thing that the judge in this case talked about. Yes, Your Honor. Our position is that many circuit courts in the United States and also the Supreme Court as well in the West Virginia case concluded that equitable interest, if there's no question that money is due and owing you, if you are without it, until you get it, during that time period, you should be getting interest running. And this interest will run compound interest because that's how that type of interest runs. And at the time when you do finally get paid, based on the time value of money, you should be placed back into the position you should have been at the time the money was actually due and owing. And all this time period needs to run interest to make you whole. So, yes, our position is that there shouldn't be a balancing of the equities because if the money is due and owing and when you get paid 10, 20 years late, you should get interest and you're made whole. That's our position. But the judge in this case said you were made whole here, so maybe if this were 1979 or 1980 again, you'd get some more, but not now. Well, if 580 were a provision to make us whole, the trial court would be correct. And that's where we differ with the trial court's opinion. The trial court seems to believe that 580 is a compensatory provision. We do not believe it's a compensatory provision. We believe it's a provision that's meant to work as a deterrent, that assurity says, well, if I don't pay, I know I will definitely be hit with 6% interest under 580, no matter what. It does work as a deterrent when 6% is substantially above market rate? That may be true, Your Honor, but when we're engaging in contracts, we don't know at the time of the contract what the interest rate may be. Inflation can take over quickly. I mean, Venezuela is a perfect example of that. But then you would be able to petition the court, as you did here, for equitable interest on top of the 580 interest. Well, we would have sought equitable interest anyway, because 580 interest is a separate, for our purposes, it's a separate concept that doesn't deal with compensating people. The fact that it is set at 6% means any given day you're overcompensating or undercompensating. And along with that, Your Honors, when Congress designed this statute, and as the court noted, this provision did start out in 1799. It was then reenacted in 1873, and it was moved from a judiciary provision in 1948 into the customs provision again. So as late as 1948, Congress has viewed this statute, even in moving it. So if it had decided that it wanted something different, that it wanted to put in a compensatory construct, it could have built into it the same language that's used in 1505d, which is 1505d interest, which runs on the importer's duties that are owing and the fees and charges. When they don't pay, that rate runs at the treasury rate. So you now have Congress designing a system that has 1505d interest that's running at the treasury rate, the normal rate, what you would expect for when you're figuring out the time value of money. And then you also have simultaneously running 580 interest. So if customs has a bond that's larger than the duties that were due by the importer, there is room in that bond for the importer doesn't pay, because that's what's going to trigger the bond being due. There's room in that bond for that 580 interest to come to the surface or come to the cap of the bond, the face amount of the bond. So the fact that that exists in the world... Isn't it true that the 580 interest, since it is a statutory grant and not under the bond, is not capped at the bond amount? It seems to be accepted by all the parties here that 580 interest, given that it is a statutory right, can be allowed to exceed the bond limit and they're still on the hook for it. Oh, yes, Your Honor. Absolutely. It is on top of whatever was due with respect to the bond. The point I'm trying to make, perhaps inarticulately, is that 1505d interest exists and that is truly compensatory. There's no question when you read how it's calculated. It runs on a failure to pay and you're compensating for not having turned over that money because you failed to pay. Simultaneously, with this running of 1505d interest, Congress also has another provision, also in Title 19, which is 580... You're into your rebuttal time. Would you like to save it? Yes, Your Honor. Thank you very much. There are a couple of issues that may be discussed. Thank you, Your Honors. May it please the Court? I'm Herb Shelley. I represent American Home Insurance in this case. With regard to 580 interest, I think it's pretty clear that this interest is interest. It's clear on its face in the statute. It's been applied as interest. It's a statutory interest provision. The lower court, in determining whether to apply equitable interest in addition to it, used its equitable powers to examine the situation and the compensation that the government would receive from 6% interest and made a determination that that amount more than overcompensated the government for any interest due it because of the bonds it issued. It determined there was no reason to, based on the equities, provide additional interest. And there is nothing in the statute that indicates that this was enacted as a penalty interest in 1799. The statutory interest rates for government lending money to bondholders and in other actions involving the government in 1799, 6% was the number used. There was no penalty provision added on top of it. So let's argue that the Court, on this issue of equitable interest, did not err and its determination is supportable because of its authority. There are additional interest issues, though, that do affect and I think the Court did err. One of them is the issue of whether 1505 interest applies to bonds, challenging bonds. The first error was that American Home was required to file a protest and when the protest was denied, appeal the protest under 19 U.S.C. 1514. That is not applicable to a surety. A surety is a bond contract and a surety has the right to... But that waiver basis for the CIT's ruling on that would be immaterial if we thought that 1505 does in fact apply to this. It would if you did. But we were not allowed to actually litigate, we were able to litigate it, but the Court did not rule on whether 1505 interest is applicable because... But you litigated that here on the merits. We can't do that here. No, you did do it. We did, but there was no decision made on that issue. It was remanded back to the CIT. I'm sorry, in this Court of Appeals, you filed, you made your legal arguments. We have made our, but no decision has been issued on it except for the CIT decision because of the remand. And we believe that the question of interest on a bond is challenged by the government, is applicable to be determined under the provisions in the customs contract law for bonds. And the 1514 does not apply to the ability of the government to sue the insurer. Does Cherry Hill block you from making that argument? Cherry Hill does not. In Cherry Hill, the decision was based on whether customs can make decision involving liquidation of interest. It was a liquidation case. It was not a question of illegal fraud that customs was trying to appeal. Assurity was involved, right? Pardon me? Assurity was involved. Assurity was involved, but Congress didn't authorize customs to make decisions on whether fraud existed. It makes decisions on whether the liquidation process was appropriate. And there was no fraud involved and no appeal of that in Cherry Hill. The Cherry Hill, the surety in Cherry Hill was not applying, was not making, there were no determinations made under 1514 that the surety took place. Is there anything in 1514, the language of the statute, that creates the distinction between the surety situation in Cherry Hill and the surety situation we have in front of us? Well, 1514 is a statute in which all the elements determining the liquidation process can be challenged, whether the amount of duties that customs determines are due are correct, whether there are any proprieties in the entry process. All issues pertain to the actual liquidation of entries. The surety is not involved in that process. The surety only gets involved in the process subsequently when the importer defaults on the amounts of duties due. So the surety aspect comes in later. And the proper way for the surety to be, if the surety doesn't pay the bond then, the proper way for it to be addressed is to eventually file a collection action against the surety. The surety could be involved in 1514 liquidations if it wants to, in the liquidation, try to determine the amount due. It's not involved in any other aspect of that process. It's liabilities come before, after that, when the, if the surety defaults on the bond and the government tries to, wants to collect from it. And when that happens... You did file a protest here, right? I mean, you had the right to file a protest and you, in fact, did file a protest under 1514. Yes, we did file several protests here. And then, you know, you could have filed a CIT civil action. But there was no obligation for the surety to deposit the monies due when the protests were denied and then appeal the denial of the protest. A surety has the option under surety law, contract law, to wait until the government files an action against it and raises defenses at that time in that context, which is what's on here. 580, not 580, the surety law was put in the challenge for the lower court and this court to review surety decisions. In the Customs Court Act of 1980, at that time, all these surety-type issues on bonds were handled by district courts. The Customs Court Act of 1980 consolidated that authority into the CIT and this court. So there would be one set of courts that hears these cases. At that time, it was clear under the law that existed then that there was no obligation for a surety under contract law to do anything but wait until a suit was filed and raise its defenses against the suit in that action. That change in the Customs Court Act of 1980 to give the jurisdiction to your courts did not change that provision. In fact, it increased the rights of the surety by, one, giving a specific statutory provision in 1582 to allow the surety to protect itself and the government to sue under that provision. Customs does not have the right to sue the surety on these issues under 1514. Its authority to do that is under 1582. In addition, at the time of the Customs Act of 1880, it had Section 1583. And the 1582-2, is that what it is? 2-2. And that's written in jurisdictional terms, right? It is. And is that just understood to also be the cause of action for the government? It's the cause of action for the government to sue a surety for nonpayment of a bond. Can I ask this question? There was some substantial amount of the government's demand that you all did not dispute, right? Yes, Your Honor. Was there a mechanism by which you could hand that money over to the government, say, it's not just kind of an escrow for you. It's yours. We know it's yours. We cede all claims to that money, reducing the amount of money on which the government would have to sue you, so that it would be only over the disputed amounts. The result of which, if there is such a process, might be 580 and other interests would run only on the disputed amounts, not the amounts that was in their bank account. Is there a way that that works? I know you tried to do something like that here, maybe not so successfully because you conditioned it. But is there a way in which that could occur? Well, yes, there is. In fact, we did make that offer. We made an unofficial offer in 2010 to pay as a settlement. We paid off a smaller amount. But those are settlements. That's different. When you term it as a settlement, it's not an unconditional offer because you're saying, you know, you waive your right to these other things and we'll pay you this amount now. I mean, just trying to ask a very precise question is important to me, and it's, you know, could you have reduced your own penalty under 580 or interest under 580? Could you have limited your own liability by paying the undisputed amount? Well, after the unofficial offer, we filed a formal offering compromise under the custom statutes to which we attached full payment of the principal due as cited in the complaints, which, if had been accepted, would have done what we're talking about here and left the interest litigation to go. That wasn't conditioned? It wasn't. The condition was we would pay the principal. The condition we didn't agree with was the condition customs put on it because they said they would not accept it unless, one, it included interest due, or, two, at least the amount being offered, which is the principal amount claimed in the complaints. It would be allocated first. Allocated due interest first. Right. And, yes, it can be. And so that was rejected. Does the government have to accept a check that you offer them to say this money is yours? We'll figure out later what remains in the dispute, but that money is yours. That's the precise offer we made in this case. When we followed CIT Rule 67 motion, the CIT to deposit in an account designated by the court, interest-bearing account, the amount we thought was due, and so that we could then litigate the amounts eventually. The court denied that motion because, again, customs wanted to apply the interest to principal first. But in a companion case, CIT 10-343, in which it was part of these 403 consolidated cases, but it was handled separately because there was one substantive issue, $60,000, $63,000 was the amount claimed before interest in that case. We offered, and the court accepted and the government accepted, $50,000 in place of the $63,000 that we requested to be used as the amount from which interest eventually would be calculated. So in this situation, there's one situation the court and customs actually accepted a specific offer. They did not do it in the other remaining cases. So that has been done, and they couldn't do it. It was a question of what they wanted to do. And that court was in litigation. That particular case was litigated separately, and the judge accepted that payment. You're running low on time. Would you like to address your issue about whether 580 interest should cover duties or duties plus 1505D interest? Yes. It should not cover. 580 is to be applied to interest, not to interest. No, you mean to be applied to duties, not to interest. Well. I think you said the opposite of what you said. Right. 580 will be applied. The 6% is applied to the amount due to collect the interest due. It should not. 1505, what the government wants is to include the 1505 interest they've calculated. In some of these cases, the bond is less than the amount due. Up to the bond amount, they want to include 1505 interest. And so when you apply 580 interest on top of both of those, you're applying part of that interest on interest. And so 580 is not just being applied to the principal that's due. It's also being applied to interest due. And we believe that that's not what 580 was designed for and that it should not be calculated that way. And it's because it adds substantially to the amount due by including interest on interest. Even though the statute on 580 talks about upon all bonds, you don't think that the interest is on the bond amount that is due as opposed to the subparts of what make up the bond amount that's due? It might be, Your Honor. But we do not believe that 1505 interest applies to any dubbing cases. Okay. But suppose that you don't prevail on that argument. It still should not apply because the interest should be applied. The 580 interest should just be applied to the bond amount that's due, not to the bond amount plus interest and interest. But the bond amount can include interest, right? You just said that 1505D interest can be on top of duties up to the bond amount. Right. So the bond amount that's due could arguably include both. Well, I've just spoken. The amount due under the bond is, say, $140,000. The amount of dumping duties due may be $200,000. So it's that 140 up to 200 that 1505 interest is being included in. So it's not the bond amount due. The bond amount is a set number that's set for the bond. It's not the amount of duties due. Yes, but I thought I misunderstood. I thought the 1505D interest can only be awarded if there's room above and beyond the duty amount up to the cap of the bond. That's true. Okay. But that amount plus the 1505 interest up to the cap does not include interest. The amount duties due are either less than the bond amount or up to the bond amount, what the surety owes. We understand. I think we have your argument. Thank you. Let's have Ms. Farrell. We went over by about a minute with Mr. Shelley. So let's add one minute, please, to Ms. Farrell's rebuttal time so we can keep it even. Yeah, just give her three. That's perfect. Thank you, Your Honor. Your Honor, briefly, one issue that was just raised by AHAC was this 10343 case, talking about whether or not the government can accept money. 10343 was a unique scenario. As we had discussed earlier, for the most part, there was conceded liability under virtually every bond. Well, forget about the particular case. Can a surety that says we know we owe you $8 million, we have a dispute with you over our remaining million. Here's $8 million. Let's see if we can work out the million. Maybe you have to sue them on the million, at which point the 580 interest would run, and assuming you win the lawsuit, that you get your 580 and other interest on the million, but not on the 8. Is there a mechanism by which they can do that without your saying, no, we won't take it because we want the 580 to run on the 9? Your Honor, obviously, I would have to work with my client on that, but my understanding was always that we would be willing to take money that didn't have strings attached. And then when the court decided the appropriate measures of interest, it would run on that amount of money that was left unpaid. It might be 580 running on it, equitable. Did Mr. Shelley misrepresent in some way the offers that were made in this case? Because he said the first offer was sort of conditional on settlement, but the second offer wasn't. The second offer was, please, just take this money, which is sort of the anti-dumping duty amount owed, and let us just continue to contest what should be paid in interest. My recollection was that there were conditions on that money. Was the condition that it be directed solely to the principal? I think that that's my recollection. And then there's regulations that say, no, it has to pay off the interest first. Right. And then if there's money left over, then you can start eating into the principal. Right. And I think that that, I mean, if you just step away from it, though. I mean, this court is clear in the Hartford case. The issues that can be raised by assurity are very broad. In fact, contractual issues, according to this court. Can you look at 580? Do you have it handy with you? Yes, I do, Your Honor. So what is the language that you rely on for why 580 should cover both duties and interest? Why 580 interest? Assume for a second I think it's interest. Why 580 interest ought to cover not just duties, but the 1505D interest that exists on top of the duties? Sure, Your Honor. As Your Honor had mentioned earlier, this provision begins with the phrase, upon all bonds. And then next, there's a comma, on which suits are brought for the recovery of duties. So it just has to be a bond, and then it has to be a suit for those bonds for the recovery of duties. It doesn't say that we're limiting it to the recovery of duties. It just says that that litigation that's brought has to have something to do with the recovery of duties. It is the duties and the recovery of those duties that triggers all the interest analysis in this case. If no duties are due, there's no interest. So if there were a possibility of paying the duties, but leaving a dispute over interest to be resolved later, then do you understand this statute as precluding 580 interest, even if the government has to bring a lawsuit to get the interest, because the statute says that you can only get 580 interest on suits which are brought for the recovery of duties? I think, Your Honor, because the suits are for recovery of duties, I think duties is still nevertheless, even in that scenario, the duties would still be implicated, because the interest couldn't have existed without first the presence of the duties. So they're kind of bundled. Interest doesn't run without... over and over throughout. Interest is never called duties and duties are never called interest. So if a suit is being brought solely to recover interest under 1505D, which it is, it's interest, it's not duties, then how would 580 ever apply? Then that, Your Honor, if before the litigation is ever brought, the complete amount of duties are paid? Yes. And generally, I mean, with the bonds that are due, most of the time the bonds are cut. Most of the times the bonds are insufficient for the anti-dumping duties. So a lot of the times there isn't even that vigorous to allow for a 1505D interest to run. We see that in two out of the four cases here and in other cases as well. In that situation, Your Honor, based on the plain language of 580, there's probably a very good argument that that wouldn't be 580 interest, because there has to at least, within that litigation, have to be some component of recovery of duties. Although I haven't really considered this fully. And as you know, Your Honor, any argument can always be made, and I don't know whether the recovery of duties would also implicate. But the reason this one matters to me is because you're saying the statute is meant to allow for the government to recover 580 interest on both duties and 1505D interest. And yet a lawsuit, if it were limited to 1505D interest, would not be something under which the government can recover 580 interest. So does that indicate that maybe Congress never intended interest on interest? I don't think so, Your Honor, because it would require a payment by a surety prior to the litigation. Which we just figured out probably can't be done. But in any event. Well, no. I mean, if the surety had actually paid the demand that was due, the face amount. And then continue to contest whether or not they actually owed the 1505D interest. Sure. Even though they had paid it. Yes. Kind of like your taxes, right? You can pay up front and then continue to dispute whether the liability was correct. I guess I'm confused because I thought when the surety pays up money, the money has to go to any interest that's due first before you can pay off principal. Well, if there's a dispute, customs has a mechanism to place things into suspense. In fact, the payment that was made as part of the 10343 case was placed in suspense until the final resolution about how the interest is going to run. Because it doesn't make sense to start forwarding that money on. It sits in an account until the litigation has been figured out. So customs has that mechanism. But I guess the bigger issue here is why are we even talking 580? 580 shouldn't even be in a court. Because if you had a surety who was willing to make the payment in the first instance, it wouldn't end up with the government bringing litigation. They would have made a payment and then disputed the interest in a protest and then brought it as a 1581A action, and they could have set all the interest that was due at that point in time with the court, and then the court's mechanism, if it's submitted to the court until the end of the case, the court's mechanism is to generate the very interest that would have generated under equitable constructs, and it would have been within the domain of the surety. Because once again, the United States should not be bringing actions against sureties to whom it afforded the luxury to make money by selling bonds. It doesn't make any sense. And I think this court gets it really right in Hartford. It recognizes that Congress really wants this to be showing up as a 1581A and only as a last resort should the government be bringing action. We have to move on. We went way over. Sorry, ma'am. Thank you very much. The case is taken under submission. Our next case for today.